Staples, J.
delivered the opinion of the court.
It is settled that vested rights, acquired under a statute, are not affected by its repeal. The rule is, however, different with regard to rights that are merely inchoate and executory, unless, indeed, they amount to a contract within the meaning of the constitution. As was said in Butler v. Palmer, 1 Hill N. Y. R. 324, the true principle to be deduced from all the cases is, that inchoate rights, derived under a statute, are lost by its repeal, unless saved by express words in the repealing statute; otherwise, in respect to such civil rights as have been perfected far enough to stand independent of the statute; or, in other words, such as have ceased to be executory and have become executed. In Key v. Goodwin, 4 Moore & Payne, a deposition had been taken, which was perfect and complete in every respect, except that the party had inadvertently omitted the act of enrolment until after the repeal of the statute under which it was taken. A strong effort was made to read the deposition as evidence; but the court, after much consideration, decided against the application. Lord Oh. J. Tindall said, “ I take the effect of a repealing statute to be to obliterate it, the statute repealed, as completely from the records of Parliament as if it had never been passed, and that it must be considered as a law that *221 never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded whilst it was an existing law.”
In Ansell v. Ansell, 14 Eng. C. L. R. 451, Lord Tenterden decided that the statute requiring a written promise to take a case out of the operation of the statute of limitation, had relation to the time of trial; and a parol acknowledgment made before the statute came into operation was insufficient. This decision was grossly unjust to the plaintiff, to say the least of it. He commenced his suit, founded on a verbal promise, which at the time was sufficient ground for the action; but upon the trial he was told, the statute having passed in the meantime, he must produce a writing or fail. Whether this construction be a sound one or not, it was followed by the court of Common Pleas, and by the King’s Bench in Fowler v. Chatterton, and by some of the most eminent judges of England at nisi grins. Periburn v. Sonster, 14 Eng. Law & Eq. R. 415, cited by counsel for appellee, was decided expressly upon the ground that the common law procedure act, abolishing special demurrers, had reference to future pleadings exclusively, by the very terms of the enactment. This case does not conflict with any of those cases which decide that statutes merely affecting the remedy may be repealed at the pleasure of the Legislature, unless such repeal impairs the obligation of a contract.
The rule as to acts done under a statute repealed, is clearly laid down in Springfield v. Hampden, 6 Pick. R. 501. Parker, C. J., said : “ The position that anything done under a statute while in force, remains valid, though the statute may afterwards be repealed, is undoubtedly true; but goes no farther than to render valid things actually done; but when the things themselves are merely preliminary, the principle does not authorize a further proceeding in order to render them *222 effectual. There is no such thing as a vested right to a particular remedy.
In Campbell’s Adm’r v. Montgomery, 1 Rob. R. 392, a similar principle was announced in applying the statute of 1831, which authorized equitable defences to be made at law, to a suit pending when the statute took effect, because it merely affected the remedy and not the right.
These principles apply most strongly to statutes affecting rules of evidence, which are universally regarded as pertaining to the remedies a State may afford its citizens, and not as constituting a part of a contract, or as being the essence of a right. They are, therefore, at all times, subject to the modification and control of the Legislature, like other rules affecting the remedy, and the changes which are enacted may be made applicable to existing causes of action, even in those States where retrospective laws are forbidden. Cooley’s Constitutional Limitations, p. 367.
Let us apply these plain and well-settled principles to the case under consideration. The deposition was taken on 6th March, 1866 : four days after the repeal óf the act of the 29th January, 1864. It was, therefore, taken under' a statute which had no existence. The right to use it as evidence depended upon a law which was as completely obliterated from the records as if it had never been passed. The act of March 2d, 1866, not only repeals the act of 29th January, 1864, but declares that, in all eases, parties should give their testimony ore temes. Eo distinction is made, or attempted, between pending cases and such as should thereafter be brought. So that we have not merely the repeal of the statute, which alone conferred the right to take the deposition, but also an express legislative declaration that parties should testify orally and not by deposition.
*223 It is, therefore, perfectly clear, that the deposition could not he read under either or both of these statutes, standing alone, or as modified by the general principles of law, applicable to vested rights. Can the ■defendants in error derive any aid from the provision contained in sec. 18, chap. 16, Code of 1860. That section declares that no new law shall be construed to repeal a former law as to any act done, or any right accrued, or claim arising, under the former law; or in any way whatever to affect any act so done, or any right accrued or claimed, arising before the new law takes effect, save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings.
Provisions almost identical with this enactment are found in the revised statutes of New York and Massachusetts. In both States they have been the subject of discussion and judicial decisions; and in neither State have they been held to have the effect sought to be given to similar language in our statute. According to the New York decisions, when a statute is repealed, under which a suit has been commenced, and no provision is made for the prosecution of such suit, it is to be conducted under the repealed statutes. But when the revised statutes have modified the proceedings in such suits, then such modification is to be adopted. Overseers, &c., of Milan v. Supervisors of Dutchers, 14 Wend. R. 73.
In People v. Livingston, 6 Wend. R. 626, a creditor had acquired a right of redemption under a certain form, under the then statute of executions, which, by an enactment in 1828, was to be repealed from and after the 31st Dec., 1829. The repealing statute substituted a new form of redemption. It was held that an attempt, after the 31st December, to redeem after the old form was nugatory. The right to redeem in a certain form being inchoate, and not expressly reserved *224 by tbe repealing statute, it ceased with the old law. The same doctrines were applied in Butler v. Palmer, 1 Hill’s R. 324.
In McCotter v. Hooker, 4 Seld. R. 497, 514, a question ; arose as to the right to read a deposition taken under a statute afterwards repealed. The New York Code of 1848 permitted the deposition of witnesses within the State to be taken in certain cases where they could not be taken at common law, and declared they should be received in evidence on the trial. It was held that the repeal of these provisions, without any saving clause, left depositions taken' under them incapable of being read on the trial. Judge Gardner, delivering the opinion of the court, said the repeal deprived the defendant of no right; it did not shut out the evidence by particular. facts, but merely regulated the manner in which-it should be given to the jury.
Similar decisions have been made in Massachusetts under the revised statutes of that State. In Robbins v. Holman, 11 Cush. R. 26, a motion was made to enter a non suit, in consequence of the failure of the plaintiff to answer certain interrogatories within the time required by an act passed during the pendency of the suit. It was objected that it was manifestly unjust to apply the act to pending cases.
The court held that the mode of conducting ■ a suit, or the rules of practice regulating it, are not the subject of vested rights. It might as well be contended that the party had a right to have his action tried in the court under the same organization as it existed when the suit was instituted, or by the same number of jurors, as to contend that the rules of evidence, or form .of proceeding, the form of the plea and answer, may not be changed so as to affect all future trials, whether-of actions then commenced or subsequently instituted. If the law is objectionable as violating vested rights then pending, why not equally so as to all causes of *225 action then existing. The mere fact of having instituted a suit does not give any additional vested rights. It is the demand or claim that cannot be interfered with by legislative enactment. See, also, ex parte Lane, 3 Metc. R. 213; DeWitt y. Harvey, 4 Gray’s R. 486; Bickford v. Boston & Lowell R. R. Comp., 21 Pick. R. 109.
The case of Price v. Kyle, 9 Gratt. 247, relied upon by counsel for defendant in error, is not in conflict with these decisions. In that ease it was decided that the judgment of the court below should be affirmed without damages, the petition for a supersedeas having been presented before the 1st of July, 1850, though the writ of error and supersedeas was awarded after that day. The reason is apparent. The prefering a petition to the appellate court is the commencement of the proceedings in that court; and the appeal is regarded as pending from that time. It was, therefore, a pending case from the day of the presentation of the petition. And as the second section of chap. 216 of the Code of 1849, provided that the repeal therein mentioned should not affect any suit, prosecution or proceeding pending on the 11th day of July, 1850, the appeal was to be decided according to the laws in force before that day.
In McGruder v. Lyons, and Yarborough & wife v. Deshago, 7 Gratt. 233 and 374, the application for the appeal was made after the 1st day of July, 1850, from decrees rendered previous thereto. In the first case it was held that the law, as contained in the revised Code of 1849, limiting appeals to $200, applied to the case. In the other case the party had presented his petition and delivered the record to the clerk within five years, and was therefore entitled to an appeal under the law in force when the decree was rendered; but five years had elapsed before the bond was given as required by *226 the law in the Code of 1849; and it was held that the aPPeal was not taken in sufficient time.
The provision in the Code now under consideration protecting “ rights accrued” was especially relied on in each of these cases. The court, however, was of opinion that as laws allowing appeals merely affect the remedy, the section in question did not operate so as to save the party a right of appeal. A party may, under the faith of existing laws, postpone his application for an appeal, or he may employ counsel and incur the expense of procuring voluminous records, and before his petition can be presented the Legislature changes the law under which he reposed with entire confidence, and deprives him effectually of all remedy.
Injustice so gross led to the adoption of a special provision in the act of 22d June, 1870, declaring that a right of appeal, under the old law, should not be affected by the provisions of the new law limiting a right of appeal to two years. But if, under such circumstances, a right of appeal is not “a right accrued” within the purview of section 18, chap. 16, of the Code, it is difficult to understand by what process that section • can be so construed as to confer a right to testify by deposition, because a commission has been procured and notice given that the deposition would be taken. The notice is for the benefit of the opposite party, and the commission the warrant to the non-resident officer. They are conditions imposed, and do not confer a vested right, nor the essence of a vested right. These acts, and others of a similar character, the manner in which juries are to be empanelled, rules to be held, and witnesses are to testify, are merely the proceedings in a cause required by the statute to be in conformity to the laws in force when they are had.
In this ease it was not proved, or even suggested upon the trial, that the objection to the deposition ope *227 rated as a surprise to the plaintiffs, or that they would sustain any loss or damage by its rejection. It might have been more inconvenient and expensive to them to attend the trial and testify ore tenus than by deposition; but it could divest no right to require them to do so. The argument of mere personal inconvenience cannot prevail against the plain letter of the statute; nor can it serve as the foundation of a right to a particular remedy after the law is repealed affording such remedy; more Especially where the Legislature has furnished another, equally beneficial and efficacious.
■ It is insisted, however, that the act of March 2d, 1866, is null and void, because it does not conform to the constitutional provision, which declares that “no law shall embrace more than one object, which shall be expressed in the title.” Some of the judges are of opinion that the act is substantially in compliance with this provision of the constitution; that it was intended and operates as a repeal of the act of July 29th, 1864, independent of the repealing clause therein contained. And further, the Legislature having amended the title to the act of 1866 at an early period, and the said act, both before and subsequent to said amendment, having been accepted and recognized without objection throughout the State as a rule of action, it is now too late to raise the question of its constitutionality.
Again it is to be considered how far the repealing clause in the act of 1866 is operative, although every other clause in that act may be liable to the constitutional objection suggested. The rule is certainly well established, that where the act is broader than the title the courts will give effect to so much of the act as is covered by the title. Whether such a construction could be given in this case consistent with the manifest purpose of the Legislature, is a question upon which there is also some difference of opinion.
Again, some of the judges are strongly inclined to *228 hold that this provision in the constitution is simply directory; intended not as an absolute limitation upon the power of the Legislature, but as a guide to its judgment. The question is a grave one, upon which there is much conflict of authority, and will be decided by this court, if ever presented, only upon the most, careful and deliberate consideration.
This diversity'of opinion among the judges does not change the result to which they arrive; as all concur in the opinion that the Circuit court erred in permitting the depositions to be read; and for this reason the judgment of the Hustings court, and that of the District court, must be reversed.
Judgment reversed.